UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTHONY J. BASTIAN, JR. | CIVIL ACTION |
| VERSUS | NO. 10-1848 |
| MARLIN GUSMAN ET AL. | SECTION "J" (2) |

### REPORT AND RECOMMENDATION

Plaintiff, Anthony J. Bastian, Jr., is a prisoner currently incarcerated in the Hunt Correctional Center in St. Gabriel, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman and Deputy J. Mills. Bastian alleges that while incarcerated in the Orleans Parish Prison system ("OPP") in December 2009, Deputy Mills failed to protect him from an attack by other inmates. He seeks monetary and injunctive relief. Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On September 21, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he is currently incarcerated in the Hunt Correctional Center in St. Gabriel, Louisiana, based upon his conviction on August 28, 2010, for possession with intent to distribute crack cocaine, for which he is serving a ten-year prison sentence. He confirmed that his claim in this case is based upon an incident that occurred on December 11, 2009, while he was incarcerated in OPP. He said he was incarcerated in OPP from about December 5, 2009 to September 7, 2010. He confirmed that his claim is that he was stabbed by other OPP inmates while defendant Deputy Mills stood by and did nothing to protect him.

Asked to describe what happened on the date of the particular incident on which he bases this claim, Bastian testified that it was roll call time, and he and other prisoners were required to move to the front of the day room in the cell area to be present for roll call. He testified that at that time, about 6:30 p.m., another inmate told Deputy Mills, who was taking roll call alone, that other inmates in the cell area "wanted to jump him" and the complaining inmate wanted to see a ranking officer. Bastian testified that Mills "went out to call rank," and when Mills returned, he told the inmates that ranking officers "were coming."

"When he said that," Bastian testified, ". . . pandemonium broke loose, pandemonium just broke loose, and I was caught up in the crossfire. I didn't know

anyone.  I wasn't bothering anybody.  I had just come into jail . . . I just got caught up in the crossfire. . . . They just went for anybody."

Bastian estimated that half a dozen inmates were "on me," i.e., attacking him, but he did not know the total number of prisoners who were involved in the melee.  He said he did not specifically know who was attacking whom, and he did not know the name of the other inmate who had complained and who was also then being attacked.  Bastian reiterated that he had just come into that tier of the jail and that at least six inmates attacked him while a number of others attacked the other inmate who had first asked Mills to summon a ranking officer.  He described the fight in terms of a riot with "people over here and people over here and that's how it went."

He stated that during roll call and the subsequent fight, Deputy Mills was on one side of the gate at the bars of the cell tier, while the inmates were on the other side.  He complained that when the fight broke out, Deputy Mills "stood by and just watched." Bastian testified that Mills was the only deputy present during roll call and when the fight broke out.  He stated that he did not know how many inmates were involved in the fight, but 28 inmates were housed in that dorm.  He could not say if all of the 28 inmates in the tier were involved in the fight.  He could say only that about a half dozen attacked him and another group of several attacked the other inmate.

Bastian testified that the fight lasted "a nice little minute, a nice little about three to five minutes. All I know, I was kicked, beaten, stabbed, punched [by other inmates], until the deputies, till the colonel, lieutenant or major, whatever he was, until he came. That's when it ceased." He repeated that the three to five-minute fight among inmates occurred on one side of the cell bars, while Deputy Mills stood on the other side of the bars. Plaintiff testified that the fight broke up when the ranking officer, who had been summoned by Mills, arrived at the scene with three or four other deputies to join Mills. He said that upon their arrival, the group of deputies entered the cell area and brought the inmates into the hallway.

Asked to specify his complaint against Deputy Mills, Bastian testified that Mills "could have prevented it by pulling us out or stopping it before hand." He said that Mills's statement to the inmates that ranking officers were on the way was a "green light" for the fight to begin. "He could have stopped it some kind of way, instead of just watching. He could have stopped it. . . . He could have pulled [the complaining inmate] out," instead of going off to call for the ranking officer. Instead, Bastian said, "pandemonium broke loose." Bastian testified that before the fight broke out, the other inmate had told Mills that other prisoners on the tier "wanted to harm him and he wanted to check off the tier" and that was why he wanted "to see rank." He explained again that Mills complied with the inmate's request, went off to summon a ranking officer, and

4

when he returned to tell the inmates that a ranking officer was coming, the fight broke out. He alleged that Mills "saw it brewing, you could have seen the tension was in there."

Bastian said he knew nothing about whatever tension among the inmates had caused the fight. "I had just come up there. I didn't know nobody. I got caught up in the crossfire." Bastian did not know whether Mills had seen any trouble brewing before the incident that day. "By the time I got there, it was already into play . . .When I was coming through the door, I could hear him [the other inmate] telling Mills he needed to check off the tier because they wanted to do him something, and Mills left, came back, said rank was on his way and – boom – there they go."

Bastian said he was already injured, with 21 stitches in his jaw, when he arrived on the tier a little less than a week before this incident. He repeated that he knew no one among the other inmates and had no knowledge of any other fights occurring in that tier, either during the week he had been there or before.

Asked what injuries he suffered in the attack, Bastian testified that he received "two stab wounds, a collapsed left lung and that's it."

Bastian stated that he had not yet received a copy of his medical records, which I had ordered and received prior to the conference. Record Doc. Nos. 6 and 14. During

the conference, defense counsel was ordered to provide plaintiff with a copy of the medical records immediately.

Bastian testified that he received immediate medical care for the wounds suffered in the attack. He said he was taken to the hospital after the attack and was given a "breathing tube" for his collapsed lung. He said he had a puncture wound in his chest from the stabbing that required bandaging at the hospital and subsequent daily bandage changing. He said he continues to experience difficulty breathing, that "my nose gets stopped up for no apparent reason" and he now hears a "hissing sound" when he breathes. He testified that the laceration from the stabbing was more like a puncture than a cut and that it had apparently been inflicted by "something like an ice pick," so that it resulted in more of an internal wound than an external wound. He said both the puncture wound and the need for the breathing tube had healed.

Bastian made no allegation that defendant Sheriff Gusman was personally involved in the incident or that he has been sued as anything other than the official with ultimate supervisory responsibility for OPP operations.

## ANALYSIS

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been

filed in forma pauperis. 28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

## II.  FAILURE TO PROTECT FROM HARM

While the stabbing incident and inmate melee described by Bastian are truly unfortunate, the question for this court is whether a violation of federal constitutional rights has been stated. Accepting as true for present purposes all of Bastian's written submissions and testimony, I must conclude that no violation of Bastian's constitutional rights by the defendants occurred in these unfortunate circumstances.

Bastian was a pretrial detainee at the time of the incident on which he bases this claim. In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Bastian in this case. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650. Here, nothing more than episodic acts or omissions of jail officials, specifically Deputy Mills, have been alleged. Although plaintiff alleges that he was exposed to harm by a prison official's acts or omissions, he fails to state a claim of violation of his constitutional rights cognizable under Section 1983.

Prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650. The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Newton, 133 F.3d at 308. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

Of particular application to Bastian's case, the Fifth Circuit and other courts have consistently held that factual and legal claims like those asserted here fail to establish an

actionable violation of a prisoner's constitutional rights. In Longoria v. Texas, 473 F.3d 586 (5th Cir. 2006), the Fifth Circuit reversed a decision by the lower court and ordered dismissal of a claim similar to Bastian's. The Fifth Circuit held that outnumbered, unarmed prison officials who were present during an inmate attack had no constitutional duty to endanger their own safety by intervening to protect an inmate stabbed in the incident. "[N]o rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence. The officers violated no 'clearly established' law by failing to intervene while unarmed." Id. at 594. In the same decision, the Longoria court reiterated its holding in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), that a response to an inmate's complaints about his safety that includes referring the matter for further investigation or other appropriate administrative action, as Deputy Mills did in immediately summoning a ranking officer in response to the complaining inmate's specific request, "fulfills an official's protective duties under the Eighth Amendment." Longoria, 473 F.3d at 594 (citing Johnson, 385 F.3d at 526).

In numerous decisions, the Fifth Circuit and other courts have held that a prison official, who reacts to an inmate melee in the manner Deputy Mills is alleged to have responded in Bastian's case, acts reasonably and commits no violation of constitutional rights for which an inmate may state a cognizable Section 1983 claim. See Carrothers v.

Kelly, 312 Fed. Appx. 600 (5th Cir. 2009) (dismissal of inmate's suit affirmed where defendant prison guard, who was the only officer on the jail tier at the time of an inmate stabbing, radioed for help and left the tier to obtain assistance, and thereby did not act unreasonably); Curbow v. Jackson, 307 Fed. Appx. 828, 2009 WL 139590 (5th Cir. 2009) (dismissal as legally frivolous of suit by inmate stabbed and beaten by other inmates during a prison recreation yard riot affirmed, even though defendants were subjectively aware of some risk but acted reasonably in response to it); Black v. Colunga, 656 F.Supp. 625, 637-38 (E.D. Tex. 2009) (applying Longoria standard, inmate's Section 1983 complaint dismissed where defendant corrections officer reported inmate threat to ranking officers and did not intervene alone in inmate attack); Verrette v. Major, 2008 WL 4083032, *3-4 (W.D. La. 2008) (claim dismissed against armed prison guards who did not intervene immediately in an inmate attack that happened quickly, when they acted with due concern for the security of themselves and the other inmates involved in the incident); Graves v. Webb, 2008 WL 1782635, *1 (S.D. Tex. 2008) (inmates' claim dismissed where guards left the scene of an inmate riot in a prison kitchen and returned five minutes later with a riot gun to restore order); Morris v. Ward, 2007 WL 951433, *1 (W.D. Mich. 2007) ("The Eighth Amendment does not require a prison guard to intervene in an armed assault by one inmate against another inmate when the intervention would place the guard in danger of physical harm.").

In this case, it cannot be concluded that Deputy Mills or any other prison official unconstitutionally exposed plaintiff to a substantial risk of serious harm. No deliberate indifference in the constitutional sense occurred. Neither prison officials nor Bastian himself had any reason to believe or even suspect that the inmates who allegedly attacked him posed a significant risk of danger to Bastian himself under these particular circumstances. There was no history known to defendants of prior incidents between Bastian and the other inmates. The incident occurred suddenly and without warning. As Bastian testified, prison officials had no reason to suspect that the inmates who attacked him posed any known or anticipated threat to him before the assault, just as he himself had no reason to believe that the inmates posed any threat to him.

Mills acted reasonably in response to the other inmate's complaint and request to see a ranking officer. There is no allegation that Mills was armed or otherwise equipped to do anything other than what he did. It would have posed an unreasonable threat to his own safety and the general security of the tier for Mills to attempt <u>alone</u> to respond to the inmate's complaint or to intervene in an inmate melee involving several among more than two dozen prisoners who were in that tier. Bastian's testimony, even accepted as true in its entirety, does not rise to the level of deliberate indifference by Mills or anyone else sufficient to establish a constitutional violation.

III. <u>NO CLAIM AGAINST SHERIFF</u>

Bastian makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which plaintiff's claims are based. "There is no respondeat superior liability under section 1983." <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996). Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983). To hold this defendant liable, plaintiff must establish either that he "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981); <u>accord</u> <u>Sanders</u>, 950 F.2d at 1159-60. In the instant action, plaintiff has failed to establish either of these two criteria.

In addition, no allegations sufficient to state a liability claim against this defendant under Section 1983 as a person with final authority for making municipal policies or decisions have been stated. <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84 (1986). A supervisory official may be held liable for his subordinates' actions only if the official implemented an

unconstitutional policy that causally resulted in plaintiff's injury.  Monell, 436 U.S. at 691-95; Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which this defendant can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___17th___ day of November, 2010.

                                                              JOSEPH C. WILKINSON, JR.
                                       UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.